Merrimack
No. 89-349

ALLSTATE INSURANCE CO.

v.

WALTER STAMP, CAROL STAMP

AND

WALTER ROBERT STAMP, II

March 22, 1991

*Wiggin and Nourie*, of Manchester (*Andrew L. Isaac* on the brief and orally), for the plaintiff.

*Perkins, Phillips & Waters P.A.*, of Concord (*Timothy P. Gurshin* on the brief and orally), for the defendants.

PER CURIAM. This declaratory judgment proceeding arose from an underlying tort action in which Hopkinton police officer Ira Migdal and his wife alleged that the minor defendant Bobby Stamp shot Officer Migdal in the leg, causing him serious bodily injury and his wife loss of consortium, and that the defendants Walter and Carol Stamp, Bobby's parents, also caused these injuries by negligently supervising Bobby. The plaintiff in this proceeding, Allstate Insurance Company, obtained a declaratory judgment from the Superior Court (*Mohl*, J.) that, with respect to the Migdals' allegations in the underlying tort action, Allstate was not obligated to provide the Stamps coverage under their Allstate homeowner's policy, from which the Stamps appealed. We affirm.

On the morning of May 17, 1986, Bobby Stamp, using his father's firearms and ammunition, fired hundreds of bullets from the Stamps' residence into the street. During the course of this incident, Officer Migdal, responding to a report of gunshots, arrived at the defendant's home and suffered a bullet wound to his left leg.

The Migdals subsequently sued not only Bobby Stamp, but Walter and Carol Stamp, as well, for their negligent supervision of Bobby. Under their claim of negligent supervision contained in count I of the writ, the Migdals alleged that Bobby Stamp "fire[d] . . . at [Officer] Migdal," and in count III they alleged that

> "[Bobby Stamp] had a duty to conduct himself in a manner so as to not create an unreasonable risk of harm to others; that wholly unmindful of such duty, [Bobby] aimed a loaded firearm at the plaintiff Ira J. Migdal and caused it to discharge and the bullet therefrom struck the plaintiff in the left leg seriously injuring him."

The Stamps filed a claim under their Allstate policy, Section II, entitled "Family Liability and Guest Medical Protection," which provided coverage in the form of legal defense and indemnification as to

certain suits brought against the insureds, but which excepted from such coverage suits involving "bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which in fact are intended by an insured person." The "Definitions" section of the policy further explained that, for coverage purposes, the "act . . . of . . . an insured person will be binding upon another . . . insured person." There is no dispute that Walter, Carol and Bobby Stamp were all "insured persons" under this policy.

Citing the Section II coverage exception, Allstate denied the Stamps' claim and brought this action against them. The superior court, ruling on cross motions for summary judgment, found, *inter alia*, that the Migdals' writ had alleged an "intentional act" on the part of Bobby Stamp, "an insured" under the Stamps' Allstate policy, and that therefore Allstate was under no obligation to defend or indemnify the Stamps in the underlying suit.

The Stamps appealed the superior court's ruling on the following grounds: (1) the provision excepting coverage for the intentional or criminal acts of "an insured" person referred solely to the acts of the insured individual seeking coverage, and not, as the superior court found, to the acts of any insured, with the result that coverage for Walter and Carol Stamp under the negligent supervision count cannot be defeated by the character of Bobby's acts; (2) Bobby Stamp's acts as alleged in the Migdals' writ were not "intentional" within the meaning of the coverage exception; (3) since the court in the underlying tort action found that the Migdal writ sounded in "negligence," the superior court was precluded in this action from finding that the writ alleged "intentional acts" on the part of Bobby Stamp; (4) the superior court erred in failing to strike as inadmissible hearsay, N.H. R. Ev. 802, certain police reports submitted in support of Allstate's motion for summary judgment; and (5) a genuine issue of material fact existed as to Walter Stamp's reasonable expectations under the policy as a result of alleged representations made to him by his Allstate agent prior to his purchasing the policy.

In addressing the defendants' first contention, we take note of *Pawtucket Mutual Insurance Co. v. Lebrecht*, in which we examined an insurance policy similar to the one before us today and held that its coverage exception for the intentional or criminal acts of "the insured" did not refer to the insured seeking coverage, when the acts in question were committed not by him but by another individual insured under the same policy. *Pawtucket Mut. Ins. Co. v. Lebrecht*, 104 N.H. 465, 468, 190 A.2d 420, 422–23 (1963) (approved of in *Com-*

*mercial Union Assurance Cos. v. Town of Derry*, 118 N.H. 469, 472–73, 387 A.2d 1171, 1172–73 (1978)). In construing the policy at issue in *Pawtucket*, we reasoned that

> "when the [insurance] company used the definite expression 'the Insured' in certain provisions of the policy and the more indefinite or general expression 'any Insured' or 'an Insured' in other provisions, it intended to cover differing situations . . . . [T]he provisions excluding from liability coverage injuries intentionally caused by 'the Insured' was meant to refer to a definite, specific insured, namely the insured who is involved in the occurrence [that] caused the injury and who is seeking coverage under the policy."

*Id.* We added in *dictum* that courts should not adopt a broader interpretation of such exceptions found in policies that provide omnibus liability coverage unless it "is compelled by the clear language of the policy. . . ." *Id.*, 190 A.2d at 423.

In the present case, we are presented with distinctly different language, in the policy's exclusion of coverage for damage reasonably expected to result from the criminal or intentional acts of "an insured person or which in fact are intended by an insured person." We find that Allstate's use of the indefinite article "an," rather than the definite "the," before "insured" is a clear reference to *any* insured who commits an intentional act resulting in damages, regardless of whether or not he is the particular insured seeking coverage. *See Travelers Ins. Co. v. Blanchard*, 431 So. 2d 913, 914-15 (La. Ct. App. 1983). This interpretation is adequately supported by the plain language of the exception and is further bolstered by the policy's general provision that the act of "an insured person will be binding upon another." Thus, assuming Bobby's acts as alleged in the Migdals' writ were "intentional" within the meaning of the coverage exception, *see U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 151–52, 461 A.2d 85, 87 (1983), his parents, as well as he, were excepted from coverage.

As to the Stamps' second contention, the Migdals' writ alleged that Bobby Stamp "aimed a loaded firearm at [Officer] Migdal" and fired at him, and the Allstate coverage exception explicitly excepted damages that were "reasonably . . . expected" to result from an insured's intentional acts. In the absence of any allegation in the writ that Bobby acted unconsciously or involuntarily, which does not appear, we must construe its plain language as alleging that Bobby

intentionally aimed and fired at Officer Migdal, acts reasonably expected to result in the damages alleged. The writ, therefore, alleged "intentional acts" within the express terms of the exception, and therefore Allstate had no obligation to provide the Stamps coverage. *See id.*

██ Contrary to the Stamps' third contention, the characterization of the Migdals' writ by the court in the underlying tort action as sounding in "negligence" did not preclude the superior court in this action from finding that Bobby's acts as alleged in the writ were "intentional" under the policy exception; Allstate was not a party to the underlying action and therefore was not bound by the findings of the court in that action. *See Daigle v. City of Portsmouth,* 129 N.H. 561, 570, 534 A.2d 689, 693 (1987). In any event, those findings did not address the question of whether Bobby's acts were "intentional" within the meaning of the policy exception, and thus did not even purport to resolve that issue.

██ The Stamps' fourth claim is also without merit. The superior court's failure to strike from the record certain police reports submitted by Allstate in support of its motion for summary judgment, if error, constituted harmless error, as these reports did not affect the outcome of the case. *See Attorney General v. Morgan,* 132 N.H. 406, 408, 565 A.2d 1072, 1074 (1989). The superior court itself stated, and we have no reason to doubt, that it "did not consider the police reports . . . in deciding the summary judgment motions."

██ Finally, the Stamps claim that since they alleged in their trial pleadings that Walter Stamp's Allstate agent represented to him prior to his purchasing the policy that it "would cover [him] if [he were] sued for unintentionally causing injury to someone because of what [he] did on [his] property," and that the agent mentioned no policy exceptions, an issue of material fact existed as to Walter Stamp's reasonable expectation that he would be covered even if an insured other than himself acted intentionally or criminally. Even assuming, *arguendo,* that these allegations would have been admissible at trial as evidence either of Walter Stamp's reasonable expectation as to the policy's coverage, or of his reasonable reliance on the agent's assurances so as to estop Allstate from denying coverage, *see Robbins Auto Parts, Inc. v. Granite State Ins. Co.,* 121 N.H. 760, 762–63, 435 A.2d 507, 509 (1981), the Stamps have failed to offer any factual basis to support the conclusion that such reliance or expectation was reasonable in this case. The Allstate agent's representation

appears to have concerned merely the policy's general coverage, and the defendants offered no proof that Walter Stamp could reasonably have understood it to have excluded all exceptions explicitly listed in the written policy, including the one at issue here.

*Affirmed.*

HORTON, J., did not sit.