Hillsborough-northern judicial district
No. 92-527

## PROVIDENCE MUTUAL FIRE INSURANCE COMPANY

v.

## JOHN SCANLON, GUARDIAN OF JEFFREY SCANLON & a.

March 18, 1994

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Doreen F. Connor* on the brief, and *Mr. Rehnborg* orally), for the plaintiff.

*Law Office of Thomas Craig, P.A.*, of Manchester (*Paul D. Parnass* on the brief and orally), for the defendant Ronda Haines.

*John Scanlon, pro se*, filed no brief.

HORTON, J. The plaintiff, Providence Mutual Fire Insurance Company (Providence Mutual), appeals from an order of the Superior Court (*Groff*, J.) finding coverage under a homeowner's policy for a claim against the insured, Jeffrey Scanlon, for shooting James Haines in the eye with a BB gun. On appeal, Providence Mutual argues that coverage should be excluded under two separate policy provisions, and that the trial court should not have awarded attorney's fees to Haines' mother, Ronda. We hold that coverage exists but that the award of attorney's fees was improper, and therefore affirm in part and reverse in part.

The events giving rise to the civil action underlying this appeal are as follows. On March 3, 1991, sixteen-year-old Jeffrey Scanlon and his fifteen-year-old friend, Tim Knoetig, were shooting BB guns at targets in a field behind Knoetig's house. According to Knoetig, they quickly got bored with shooting at the targets and began to shoot at each other from a distance of about fifty feet. After about thirty minutes, two younger boys, Levi Stanley and James Haines, arrived and began to play in the field. Scanlon warned the boys to leave, but they continued to play "daredevil," running back and forth between Scanlon and Knoetig and daring them to shoot. In the course of this "game" Scanlon, Knoetig and Stanley were each hit without injury. Knoetig was hit on his hat, and Scanlon in the back, but, according to Scanlon, "we were far apart so the impact was light." After Stanley and Haines had been there for about ten minutes, Scanlon hit Stanley in the cheek, evoking only laughter. Scanlon then went inside to use the bathroom. After a few minutes, he came running out and, from about eighty to ninety feet away, fired from his waist in Haines' direction and hit him in the eye.

In July 1991, Ronda Haines, individually and on behalf of her son, brought a claim against Scanlon's father, John, on a theory of negligent supervision, and a claim against Jeffrey Scanlon alleging negligence. At the time of the events, John Scanlon and his family were insured under a homeowner's policy issued by Providence Mutual. The policy provides coverage for claims "brought against an insured for damages because of bodily injury . . . caused by an occurrence," and defines an occurrence as "an accident . . . [resulting] in bodily injury." In a separate provision, the policy excludes coverage for bodily injury "which is expected or intended by the insured." Provi-

dence Mutual agreed to defend the negligent supervision claim but filed a declaratory judgment action seeking an order that it need neither defend nor provide coverage for the negligence claim against Jeffrey. According to Providence Mutual, the incident fell within the policy's exclusion for "expected or intended" injuries. In addition, Providence Mutual contended that the shooting was not accidental, and thus was not a covered occurrence within the meaning of the policy. Providence Mutual and Ronda Haines, who was named as a defendant in the petition, both moved for summary judgment.

The superior court held Providence Mutual bound to defend and provide coverage for the claim. It ruled that the "expected or intended" exclusion was not met because the writ failed to allege that Jeffrey intended to shoot or injure Haines. Further, applying *Vermont Mutual Insurance Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986), the superior court found that because Jeffrey's actions were not so inherently injurious as to be certain to cause the injury, the injury was "accidental." Finally, it awarded Ronda Haines her court costs and attorney's fees, citing RSA 491:22-b (1983).

## I. "Expected or Intended" Exclusion

On appeal, Providence Mutual first argues that the trial court erred in finding that the exclusion for "bodily injury expected or intended by the insured" was not met. We disagree.

We interpreted this precise provision in *MacKinnon v. Hanover Insurance Co.*, 124 N.H. 456, 471 A.2d 1166 (1984), and held that the exclusion is met only if the insured actually intended the particular injury. *Id.* at 459–60, 471 A.2d at 1167. The crux of plaintiff's argument is that the "subjective" test announced in *MacKinnon* was wrong and that we should now overrule *MacKinnon* and announce an "objective" standard consistent with that followed by the overwhelming majority of jurisdictions. Under an objective standard, the plaintiff insists, even if the insured does not actually intend the particular injury, intent can be inferred where the insured's actions are substantially certain to cause injury. While we recognize that our approach in *MacKinnon* now represents a minority view, *see Foremost Ins. Co. v. Weetman*, 726 F. Supp. 618, 621 (W.D. Pa. 1989), *aff'd*, 904 F.2d 694 (3d Cir. 1990), we adhere to the principle of *stare decisis* and refuse to overrule *MacKinnon*.

As we recognized in *Brannigan v. Usitalo*, 134 N.H. 50, 53, 587 A.2d 1232, 1233 (1991), *stare decisis* is "essential if case-by-case judicial decision-making is to be reconciled with the principle of the rule of law, for when governing legal standards are open to revision

in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." (Quotations omitted.) It has even been said that in most cases "it is more important that the applicable rule of law be settled than [that] it be settled right." *Payne v. Tennessee*, 111 S.Ct. 2597, 2609 (1991) (quotation omitted). Further, "considerations in favor of *stare decisis* are at their acme in cases involving . . . contract rights, where reliance interests are involved." *Id.* at 2610. Where a decision has proven unworkable or badly reasoned, though, we will not hesitate to revisit it. *See id.* at 2609; *cf. Brannigan*, 134 N.H. at 53, 587 A.2d at 1234. Applying these considerations, we note that although *MacKinnon* has yet to be tested or applied by this court, we find it is well-reasoned and offers a straightforward and workable definition of intent.

Although it is an insurance company in this case that urges us to overrule *MacKinnon*, we believe that the insurance companies doing business in this State are best served by being able to rely on our precedents, and to use them as guidance in drafting policy provisions. Thus, a carefully drawn exclusion could avoid the *MacKinnon* test and substitute an objective standard. *Allstate Insurance Co. v. Stamp*, 134 N.H. 59, 588 A.2d 363 (1991), illustrates this point. The issue in *Stamp* was whether Allstate was required to provide coverage under a homeowner's policy where an insured minor had shot a police officer in the leg. As here, we focused on whether an intentional injury exclusion in the policy had been met. The Allstate intentional injury exclusion specifically contained *both* subjective and objective definitions of intent, excluding coverage for "bodily injury . . . which may reasonably be expected to result from the intentional or criminal acts of an insured person *or* which in fact are intended by an insured person." *Id.* at 61, 588 A.2d at 364 (emphasis added). In finding the exclusion met, we did not need to consider whether subjective intent existed because we readily concluded that objective intent was established. *Id.* at 62–63, 588 A.2d at 365. Presumably, Allstate heeded our decision in *MacKinnon* and responded by modifying its policy exclusion to specifically reach "objectively" intended injuries. This "remedy" was equally available to Providence Mutual, but where it has failed to help itself, we are unwilling to resort to the extreme measure of overruling one of our prior decisions.

■ Having held that *MacKinnon* remains in full force, we now consider whether the trial court properly applied that standard. Where, as here, a trial court's ruling was based exclusively on a review of submitted documents, we owe less deference to its factual finding than where it had the opportunity to gauge the demeanor and

credibility of witnesses. *Masse v. Commercial Union Ins. Co.*, 136 N.H. 628, 632, 620 A.2d 1041, 1044 (1993). We nevertheless hold that the trial court properly interpreted *MacKinnon* and, even applying the less deferential *Masse* standard, hold that its corresponding factual findings are well-supported in the record.

In *MacKinnon*, we held that the standard exclusion for "bodily injury . . . expected or intended by the insured" refers to actual expectation or intention. 124 N.H. at 459, 471 A.2d at 1167. Further, we held that the exclusion is not met even where the insured intended one injury but another results. *Id.* at 460, 471 A.2d at 1167. Applying this standard, the trial court found that "[Scanlon] did not intend the injury certainly." A review of the record strongly supports this finding and leads us to the same conclusion. Of particular significance is that up to the point Haines was injured, there had been no injuries to speak of even though the "game" had gone on for nearly an hour with numerous shots fired and all other participants having been hit. In short, the history up to that point could well have led Scanlon to conclude that no serious injury would result from firing his BB gun in Haines' direction.

## II. "Non-accidental" Exclusion

Providence Mutual next argues that it has no responsibility to provide a defense or coverage for Jeffrey Scanlon because the injury was not "accidental" and thus was not an "occurrence" within the terms of the policy. Again, we have interpreted this precise provision in a line of cases beginning with *Vermont Mutual Insurance Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986). In *Malcolm*, we announced the test for determining whether there is an accident:

> "If the insured did not intend to inflict the injury on the victim by his intentional act, and the act was not so inherently injurious that the injury was certain to follow from it, the act as a contributing cause of injury would be regarded as accidental and an 'occurrence.'"

*Id.* at 524, 517 A.2d at 803. The first consideration, whether the insured intended to inflict the injury, is the same test that we framed in *MacKinnon*, and accordingly requires no further treatment here. Our focus, instead, is on the second consideration in *Malcolm*: whether the act of shooting the gun at Haines was "inherently injurious." We hold that it was not.

The thrust of Providence Mutual's argument is that the trial court misread *Malcolm* and its progeny as defining an inherently

dangerous act as one that is absolutely certain to cause the particular alleged injury. According to Providence Mutual, an act should be regarded as inherently injurious whenever it is substantially certain to result in an injury. We hold that the definition of an inherently injurious act is neither as narrow as the trial court held nor as broad as Providence Mutual might urge. The rule stated by the trial court was the one we announced in *Malcolm*; however, we slightly modified *Malcolm* in two later decisions. Quite simply, the applicable rule is that an act is inherently injurious if it is certain to result in *some* injury, although not necessarily the particular alleged injury. *See Fisher v. Fitchburg Mut. Ins. Co.*, 131 N.H. 769, 773, 560 A.2d 630, 632 (1989) (sellers' act of signing two purchase and sale agreements inherently injurious as sellers would inevitably have to breach one of the contracts); *Jesperson v. U.S. Fidelity & Guaranty Co.*, 131 N.H. 257, 261, 551 A.2d 530, 532–33 (1988) (discharge of business partner inherently injurious because "[s]ome degree of . . . mental and physical distress . . . is certainly the natural consequence of such a discharge"). We recognize that our definition of "accident" represents a minority view. Nonetheless, for the reasons discussed earlier in this opinion, we adhere to our line of precedent beginning with *Malcolm*.

■ Although the trial court defined an inherently dangerous act too narrowly, we affirm its judgment because our review of the record reveals that the shooting of the gun was not inherently injurious even under the proper, broader definition. *See In re Trailer and Plumbing Supplies*, 133 N.H. 432, 438, 578 A.2d 343, 346 (1990) (affirming trial court which reached proper result by erroneous reasoning). As detailed above, the rule from *Malcolm*, as modified by *Jesperson* and *Fisher*, is that an act is inherently injurious if it cannot be performed without a certainty that some injury will result. Considering that until the final shot, numerous shots had been fired and three participants had been hit without injury, we have little difficulty concluding that it was not certain that the final shot would result in injury.

### III. Attorney's Fees

■ Providence Mutual finally argues that even if the trial court properly found coverage, it erred in awarding attorney's fees to Ronda Haines in her individual capacity and on behalf of James. Finding this issue properly before us, we hold that the trial court erred in awarding fees and costs. The trial court stated that its award of fees and costs was pursuant to RSA 491:22-b. RSA 491: 22-b, however, only permits such an award to a successful *insured*.

Because Ronda Haines was not an insured under the policy, but instead an underlying tort claimant, we hold that RSA 491:22-b provides no basis for an award of fees or costs to her. *See American Home Assur. Co. v. Star Speedway, Inc.*, 119 N.H. 954, 955, 409 A.2d 1343, 1344 (1979).

*Affirmed in part; reversed in part.*

BROCK, C.J., and JOHNSON, J., dissented without opinion from Parts I and II; the others concurred.