Calvin **THOELE**, Plaintiff,

v.

**AETNA CASUALTY & SURETY,**
Defendant–Counterdefendant–
Appellee,

v.

Michael and Elvera **KANAK**, individually and as husband and wife and as parents and natural guardians of Angela Kanak, a minor, Counterplaintiffs–Appellants.

No. 93–4068.

United States Court of Appeals,
Seventh Circuit.

Argued May 11, 1994.

Decided Oct. 28, 1994.

Ray Freeark, Jeffery A. Cain (argued), Randy Wuller, Freeark, Harvey, Mendillo, Dennis, Wuller & Buser, Belleville, IL, for plaintiffs-appellants.

D. Kendall Griffith, Kristin E. Hutson (argued), Hinshaw & Culbertson, Chicago, IL, Dawn A. Sallerson, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Eugine C. Menges, St. Clair County Atty., Belleville, IL, for defendant-appellee.

Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Calvin Thoele administered emergency care to a choking child left in his wife Sharon's care. The child's parents sued Mr. Thoele for permanent injuries she allegedly sustained as the result of his efforts. Mr. Thoele in turn brought this suit seeking a declaration that these injuries fell within the coverage of his homeowner's insurance policy. The district court concluded that the child's injuries arose from the business pursuits of Mrs. Thoele and were thus not covered by the homeowner's policy. We agree and affirm.

## I. BACKGROUND

In 1978 or 1979, Sharon Thoele decided to establish a babysitting service at the Thoeles' home in Cahokia, Illinois. She obtained the requisite license from the state, purchased a playpen, swings, porta-cribs, and a variety of other equipment, and established a separate bank account for her earnings. Her husband was largely uninvolved in her work, although he might keep an eye on children playing in their yard if he happened to be outside with them.

On March 4, 1986, Mrs. Thoele was caring for six children, including Angela Kanak. At some point, under circumstances that the record does not make clear, Angela began choking and gasping. Mr. Thoele attempted mouth to mouth resuscitation and heart massage. Although Angela survived the incident, she was left with permanent disabling injuries. Angela's parents, Michael and Elvera Kanak, subsequently brought suit against the Thoeles in state court, alleging that Sharon Thoele had been negligent in caring for Angela and that Calvin Thoele had negligently administered cardio-pulmonary resuscitation ("CPR").

Mr. Thoele subsequently filed this action in Illinois state court against Aetna Casualty & Surety ("Aetna"), which had issued a homeowner's insurance policy to the Thoeles that was in effect at the time of Angela's injury. Mr. Thoele sought a declaration that the policy covered his alleged negligence and that Aetna had a duty to defend and indemnify him. He invoked the following provision in the policy:

COVERAGE E—PERSONAL LIABILI-
TY

If a claim is made or suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, even if the claim or suit is false, we will:

a. Pay up to our limit of liability for the damages for which the insured is legally liable; and

b. Provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

R. 18, Ex. A at 13. Aetna removed the suit to federal court, where it contended that the following exclusion applied:

Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

a. which is expected or intended by the insured;

b. arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured.

NOTE: The furnishing of home day care services for

(1) a fee; or

(2) other compensation

by the insured and the rendering of such services two or more days per week for a period of two or more hours per day constitutes one type of many different business pursuits.

This exclusion does not apply to:

(1) activities which are ordinarily incident to non-business pursuits;

. . . .

R. 18, Ex. A at 14. At Aetna's request, Michael and Elvera Kanak were named as additional plaintiffs in the suit, given their obvious interest in the coverage of the Thoeles' insurance policy. R. 11. *See Reagor v. Travelers Ins. Co.*, 92 Ill.App.3d 99, 47 Ill.Dec. 507, 509–10, 415 N.E.2d 512, 514–15 (1980) ("where an insurer brings a declaratory judgment action to determine coverage of a claim against its insured, the injured person is a necessary party to the suit"). All parties consented to final disposition by the Magistrate Judge.

At the conclusion of discovery, the Kanaks and Aetna filed cross-motions for summary judgment as to whether the "business pursuits" exclusion in the Thoeles' insurance policy applied to the Kanaks' claim against Calvin Thoele. The district court determined that Sharon Thoele's babysitting constituted a "business pursuit" within the meaning of the policy. Although Calvin Thoele ostensibly was not involved in Sharon Thoele's business, the court reasoned that by virtue of the policy's reference to injuries "arising out of business pursuits of *any* insured," the exclusion applied to him as well. Finally, the court rejected the Kanaks' contention that Mr. Thoele's rendering of CPR to Angela was exempted from the business pursuits exclusion as an "activity which is ordinarily incident to a non-business pursuit." The court recognized that administering CPR per se is not an activity normally associated with babysitting. Yet, the court noted, rendering first aid to an injured child is unquestionably within the duties of a babysitter. The court thus concluded that Calvin Thoele's efforts to render emergency assistance would not satisfy the exception to the business pursuits exclusion. R. 47. After their motion to reconsider was denied, the Kanaks appealed.

## II. ANALYSIS

Our review of the district court's summary judgment ruling is de novo. *Cuddington v. Northern Indiana Pub. Serv. Co.*, 33 F.3d 813, 815 (7th Cir.1994). Sitting in diversity, we apply the law of Illinois, attempting to predict how the Illinois Supreme Court would decide the issues presented here. *Equitable Life Assurance Society of the U.S. v. Bell*, 27 F.3d 1274, 1277 (7th Cir.1994). Our focus, of course, is on the

business pursuits exclusion of the policy and the exception thereto for activities ordinarily incident to non-business pursuits. As we do when interpreting any insurance policy, we strive to effectuate the parties' intent as expressed in the contract, attributing to the unambiguous words of the policy their plain and ordinary meaning. *Playboy Enterprises, Inc. v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425, 427–28 (7th Cir.1985); *Badger Mut. Ins. Co. v. Ostry,* 264 Ill.App.3d 303, 201 Ill.Dec. 524, 527, 636 N.E.2d 956, 959 (1994).

We have no doubt that Angela's injuries arose from the business pursuits of an insured, namely Sharon Thoele. "A business pursuit is a continuous or regular activity, done for the purpose of returning a profit. This is true even of part-time or supplemental income activities." *Ostry,* 201 Ill.Dec. at 527, 636 N.E.2d at 959 (citing *State Farm Fire & Casualty Co. v. Moore,* 103 Ill.App.3d 250, 58 Ill.Dec. 609, 611, 430 N.E.2d 641, 643 (1981)); *see also Insurance Co. of Illinois v. Markogiannakis,* 188 Ill.App.3d 643, 136 Ill. Dec. 307, 315, 544 N.E.2d 1082, 1090 (1989). Illinois courts accordingly have recognized that babysitting regularly performed for compensation qualifies as a business pursuit. *Economy Fire & Casualty Co. v. Bassett,* 170 Ill.App.3d 765, 121 Ill.Dec. 481, 484, 525 N.E.2d 539, 542 (1988); *Moore,* 58 Ill.Dec. at 611–12, 430 N.E.2d at 643–44; *see also Rocky Mountain Casualty Co. v. St. Martin,* 60 Wash.App. 5, 802 P.2d 144, 145–46 (1990) (discussing the issue at length and collecting cases); *Gulf Ins. Co. v. Tilley,* 280 F.Supp. 60, 63 (N.D.Ind.1967) (Eschbach, J.), *aff'd,* 393 F.2d 119 (7th Cir.1968). Indeed, the policy at issue here eliminates any question in that regard. Although it defines "business" generally to mean a "trade, profession or occupation" (R. 18, Ex. A at 1), the business pursuits exclusion itself cites as an example of such a pursuit "[t]he furnishing of home day care services for (1) a fee or (2) other compensation by the insured and the rendering of such services two or more days

per week for a period of two or more hours per day" (*Id.* Ex. A at 14). Sharon Thoele's babysitting clearly falls within the scope of both this example and the notion of a business pursuit generally. She babysat for a number of children (six on the date Angela was injured), did so throughout the day six days a week, was required by the state to obtain a license for that purpose, invested in equipment for the venture, and maintained a separate bank account for the income she earned. Thus, the Kanaks do not really dispute that Mrs. Thoele's babysitting constituted a "business pursuit" within the meaning of the policy exclusion or that Angela's injury arose from that pursuit.

■ Nonetheless, the Kanaks argue that any injury Calvin Thoele may have caused Angela did not arise from *his* business pursuit, as he played no role in Sharon Thoele's business and did not act as its employee in attempting to aid Angela. If the exclusion merely applied to the business pursuits of *"the* insured," the Kanaks might have a point. But the exclusion instead applies to injuries arising out of the business pursuits of *"any* insured." The district court was quite right to conclude that the choice of the word "any" broadened the exclusion to include injuries triggered by one insured in connection with the business pursuit of another. *See Sales v. State Farm Fire & Casualty Co.,* 849 F.2d 1383, 1385 (11th Cir. 1988); *Spezialetti v. Pacific Employers Ins. Co.,* 759 F.2d 1139, 1141–42 (3d Cir.1985); *State Farm Fire & Casualty Co. v. Davis,* 612 So.2d 458, 466 (Ala.1993); *Allstate Ins. Co. v. Stamp,* 134 N.H. 59, 588 A.2d 363, 365 (1991) (per curiam); and *Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748, 752 (Colo.1990), all holding that exclusions for the intentional or dishonest acts of "an" or "any" insured operate to bar coverage for all insureds when one of them commits such an act. *See also Vanguard Ins. Co. v. McKinney,* 184 Mich.App. 799, 459 N.W.2d 316, 320 (1990); *State Farm Fire & Casualty Co. v. Wolford,* 116 A.D.2d 1011, 498 N.Y.S.2d 631, 632–33 (1986) (mem.).[1]

---

1. Many jurisdictions, including Illinois, have recognized an "innocent co-insured" exception in cases where one insured engages in misdeeds

which, if coverage were denied, would unfairly burden other members of the household—for example, where one spouse sets fire to the family

■ We move on to consider whether, in administering CPR to Angela, Mr. Thoele engaged in an activity "ordinarily incident to a non-business pursuit," such that it is excepted from the business pursuits exclusion of the policy. The scope of this language is not entirely self-evident, and Illinois courts have eschewed any categorical definitions of activities falling within this exception in favor of a case-by-case examination of the particular act or omission giving rise to the injury. *See Markogiannakis*, 136 Ill.Dec. at 315–16, 544 N.E.2d at 1090–91; *Moore*, 58 Ill.Dec. at 613, 430 N.E.2d at 645. To the extent that a general rule has emerged from these cases, however, it is that "[t]he policy will cover acts which by their nature are not associated with the insured's business pursuits, but which are casually related to the business activities." *Ostry*, 201 Ill.Dec. at 528, 636 N.E.2d at 960; *Markogiannakis*, 136 Ill.Dec. at 316, 544 N.E.2d at 1091; *Moore*, 58 Ill. Dec. at 613, 430 N.E.2d at 645. In other words, if the injury was caused by an act that would not have occurred but for the business pursuits of the insured, that act is beyond the scope of the policy. *Markogiannakis*, 136 Ill.Dec. at 317, 544 N.E.2d at 1092. If, however, the injurious act would have occurred regardless of the insured's business pursuit, the exception applies and coverage is provided, even though the act may have had a casual relationship to the business pursuit.

*Moore* illustrates the point. In that case, a child in the paid care of a babysitter pulled a pan of boiling water onto himself while the sitter was preparing lunch. The sitter's duties had included the preparation of lunch for that child, but at the time she was preparing lunch not only for him but for herself and her own child, and she indicated that she would have been making the same preparations even if she had not been required to prepare lunch for the children in her paid care. Consequently, the source of the harm (the boiling water) would still have been

home without the other spouse's knowledge. *See Economy Fire & Casualty Co. v. Warren*, 71 Ill. App.3d 625, 28 Ill.Dec. 194, 196–97, 390 N.E.2d 361, 363–64 (1979); *Fittje v. Calhoun County Mut. County Fire Ins. Co.*, 195 Ill.App.3d 340, 142 Ill. Dec. 3, 7, 552 N.E.2d 353, 357 (1990); *cf. West Bend Mut. Ins. Co. v. Salemi*, 158 Ill.App.3d 241, 110 Ill.Dec. 608, 612, 511 N.E.2d 785, 789 (1987) (employing similar rationale to protect seller of real estate who retained interest in property destroyed by buyer's arson). *See also, e.g., Kulubis v. Texas Farm Bureau Underwriters Ins. Co.*, 706 S.W.2d 953 (Tex.1986); *Hedtcke v. Sentry Ins. Co.*, 109 Wis.2d 461, 326 N.W.2d 727 (1982); *Morgan v. Cincinnati Ins. Co.*, 411 Mich. 267, 307 N.W.2d 53 (1981); *Delph v. Potomac Ins. Co.*, 95 N.M. 257, 620 P.2d 1282 (1980). *Contra Bryant v. Allstate Ins. Co.*, 592 F.Supp. 39, 41–42 (E.D.Ky.1984); *Dolcy v. Rhode Island Joint Reins. Assoc.*, 589 A.2d 313 (R.I.1991); *Vance v. Pekin Ins. Co.*, 457 N.W.2d 589, 593 (Iowa 1990); *Woodhouse v. Farmers Union Mut. Ins. Co.*, 241 Mont. 69, 785 P.2d 192, 194 (1990). We do not believe the Illinois Supreme Court would find the "innocent co-insured" rationale applicable here, where Mr. Thoele was not an unwitting "victim" of any wrongdoing by his wife. Instead, the Kanaks seek to hold him liable for injuries which, although they arose out of Mrs. Thoele's business pursuit, were allegedly caused by his own actions in furtherance of that pursuit.

We also note that some courts have relied on severability clauses to find coverage for a co-

insured despite exclusions that would otherwise deny coverage based on the specified acts of "an" or "any" insured. *E.g., Premier Ins. Co. v. Adams*, 632 So.2d 1054, 1056–57 (Fla.App.1994); *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 840 P.2d 456, 461–62 (1992). *Contra Chacon*, 788 P.2d at 752 n. 6 (majority), 752–53 (concurrence); *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 183–84 (N.D.1994). *Compare U.S. Fidelity & Guar. Co. v. Globe Indemnity Co.*, 60 Ill.2d 295, 327 N.E.2d 321, 323 (1975) ("[a] reasonable interpretation of the severability clause ... leads to the obvious conclusion that each insured is to be treated as if each were separately insured"), *with State Farm Fire & Casualty Co. v. Guccione*, 171 Ill.App.3d 404, 121 Ill.Dec. 537, 538–39, 525 N.E.2d 595, 596–97 (1988) (finding that clause excluding coverage for bodily injury to "any" insured party applied to co-insured despite severability provision). The Aetna policy issued to the Thoeles does contain a severability clause providing that "[t]his insurance shall apply separately to each insured." R. 18, Ex. A at 17. However, the Kanaks have neither relied on this clause nor cited any of the conflicting caselaw regarding the effect of this provision on exclusions for the acts of "any" insured. As a result, we consider any argument they might have made based on the severability provision to have been waived—particularly in view of the split in authorities and the lack of Illinois cases addressing the question under similar circumstances.

present even if the insured had not been babysitting for profit. For that reason, the court concluded that the injury resulted from an activity ordinarily incident to a non-business pursuit. 58 Ill.Dec. at 613, 430 N.E.2d at 645. Had the sitter been preparing lunch solely for the children for whom she was paid to sit, the court indicated, "her activity would be, more likely, a business pursuit." *Id.; see also Tilley,* 280 F.Supp. at 65.

Likening this case to *Moore,* the Kanaks posit that Mr. Thoele would have administered CPR to Angela even if his wife had not been paid to care for her, and so they argue that his efforts may be characterized as activity ordinarily incident to a non-business pursuit. But whether Mr. Thoele would have been inclined, even obligated, to aid Angela had she merely been a social guest at the Thoele home is immaterial. The point of *Moore,* as we read it, is that the source of the injury was, in some measure, independent of the business pursuit. In other words, the pursuit of babysitting neither created nor enhanced the risk; it merely placed a child in the way of a harm that was present in any event.[2] In that sense, the pot of boiling water in *Moore* was no different from a defective home appliance just as likely to have harmed anyone who happened to be present when it malfunctioned, irrespective of the homeowner's babysitting activities. *See St. Martin,* 802 P.2d at 147; *see also Moncivais v. Farm Bureau Mut. Ins. Co.,* 430 N.W.2d 438, 441 (Iowa 1988) (acknowledging and criticizing the distinction).[3]

Here, in contrast, Angela's injury sprang directly from the care that Sharon Thoele was paid to provide. As the district court acknowledged, CPR may not be a skill normally thought to be in the babysitter's portfolio. Yet, an essential aspect of child care is protecting the child from harm and coming to her aid when she is in distress—be it from a scraped knee or an obstructed airway. It was within this context that Mr. Thoele stepped in to help Angela. Nothing extraneous to Sharon Thoele's babysitting harmed Angela; it was, instead, the manner in which Mrs. Thoele provided care (in this case, through her husband) that allegedly caused Angela to be injured.

The Kanaks also construe *Moore* to hold that the "ordinarily incident" language leaves only "peculiarly business activities" excluded from coverage. That is a misreading of *Moore,* however. *Moore* acknowledged that the exclusionary language of the policy at issue in that case *could* be read to suggest "that the nature of the activity determines coverage and that only peculiarly business activities are excluded." 58 Ill.Dec. at 615, 430 N.E.2d at 647. However, the court made this observation only as it discussed the ambiguity of the exclusionary language (a matter we consider below), not its intended meaning. *See id.,* 58 Ill.Dec. at 614–15, 430 N.E.2d at 646–47. It is quite clear from the balance of the opinion that *Moore* did not attempt to separate the universe of injury-causing activities into two subsets—those that are inherently and "peculiarly" business activities and those that are not. On the contrary, the court recognized that a single activity can be either a business activity or

---

**2.** Of course, but for the homeowner's business as a babysitter, the child in all likelihood would not have been present in her home. However, *Moore* rejected that point as a basis for determining whether the exclusion for business pursuits applied. 58 Ill.Dec. at 613, 430 N.E.2d at 645; *see also Tilley,* 280 F.Supp. at 65.

**3.** One might argue that the child's injury in *Moore* was due not to the extraneous act of boiling water but rather to the home-owner's failure to supervise the child adequately. A number of jurisdictions have indeed taken that approach, thus deeming a variety of in-home day care injuries excluded from coverage. *See, e.g.,*

*U.S. Fidelity & Guaranty Co. v. Heltsley,* 733 F.Supp. 1418, 1422 (D.Kan.1990) (noting that *Moore* has been rejected in the more recent case law); *Moncivais,* 430 N.W.2d at 442; *Maryland Casualty Co. v. Hayes,* 827 S.W.2d 275, 277–78 (Mo.App.1992); *St. Martin,* 802 P.2d at 147; *McCloskey v. Republic Ins. Co.,* 80 Md.App. 19, 559 A.2d 385, 390 (1989). Perhaps, when confronted with the issue, the Illinois Supreme Court will reason similarly. But whether the court embraces *Moore* or chooses instead to follow these more recent cases is immaterial here, for we think it clear under either approach that the administration of CPR to a child in the paid

not, depending on its context and purpose. *See* 58 Ill.Dec. at 613, *id.* at 645; *Moncivais*, 430 N.W.2d at 441 (construing *Moore*). *Moore* and a variety of other Illinois cases thus recognize that even mundane things occurring within a home or that a homeowner does elsewhere can be excluded from coverage when they happen for a business reason. *See* 58 Ill.Dec. at 613, *Moore*, 430 N.E.2d at 645 (preparing lunch); *Ostry*, 201 Ill.Dec. at 528, 636 N.E.2d at 960 (boating); *Markogiannakis*, 136 Ill.Dec. at 316–17, 544 N.E.2d at 1091–92 (arguing); *Bassett*, 121 Ill.Dec. at 484, 525 N.E.2d at 542 (backing out of driveway).[4]

Ultimately, it is difficult to characterize the administration of CPR as *ordinarily* incident to the pursuit of anyone except paramedics and other trauma care specialists. It is clear in this case, however, that CPR was applied within the context of child care that Mrs. Thoele was paid to provide. As the Illinois court observed in *Moore*, "[c]hild care for compensation is not ordinarily incident to the conduct of a household, and contemplates the exercise of due care to protect the child from household activities and conditions." 58 Ill. Dec. at 613, 430 N.E.2d at 645; *accord Stanley v. American Fire & Casualty Co.*, 361 So.2d 1030, 1032 (Ala.1978). We believe that the obligation to act with due care naturally extends to any first aid administered to the child. The failure to exercise that degree of care is thus beyond the scope of the homeowner's policy when aid is rendered to a child in the paid care of an insured.

■ We must finally consider whether the pertinent policy language is ambiguous, such that Mr. Thoele is entitled to coverage despite our belief that the Kanaks' claim otherwise falls outside the scope of the policy. *Moore* concluded that the particular facts at issue in that case reasonably could be interpreted to fall within or without the business pursuits exclusion, and the court cited this

ambiguity as an alternate basis for its holding in favor of the insured. 58 Ill.Dec. at 615, 430 N.E.2d at 647; *see also Tilley*, 280 F.Supp. at 65. Subsequent Illinois cases, however, have applied the exception and exclusion to deny coverage without noting any ambiguity in identical policy language. *See Ostry*, 201 Ill.Dec. at 527–28, 636 N.E.2d at 959–60; *Markogiannakis*, 136 Ill.Dec. at 316–17, 544 N.E.2d at 1091–92; *Bassett*, 121 Ill.Dec. at 484, 525 N.E.2d at 542. The Kanaks make no attempt to distinguish these cases; indeed, beyond noting that *Moore* found the language to be susceptible of contrary interpretations (Kanak Br. at 12), they have not even argued that the language is ambiguous vis à vis the facts here. *See Bassett*, 121 Ill.Dec. at 484, 525 N.E.2d at 542 ("In determining if an ambiguity exists, the provision must be read in its factual context, not in isolation.").

As we noted at the outset of our discussion, the meaning of the exception for "activities ordinarily incident to a non-business pursuit" is not self-evident, and we are more than a little puzzled as to why insurers like Aetna have not attempted a better articulation of the exception in the wake of cases like *Moore*. Nonetheless, although we agree that the policy could be more clear in this regard, it does not strike us as ambiguous in the context of the facts before us. Courts must be particularly vigilant in recognizing ambiguities where exclusions from coverage are concerned. *Playboy Enterprises*, 769 F.2d at 428; *Tilley*, 280 F.Supp. at 64. But we must again emphasize that the language of exclusion in Aetna's policy could not be more clear—injuries arising from business pursuits, including regular babysitting for compensation, are *not* covered. *See Maryland Casualty Co. v. Hayes*, 827 S.W.2d 275, 278 (Mo.App.1992). Here, in contrast to *Moore*,

---

care of a homeowner is not an activity ordinarily incident to a non-business pursuit.

**4.** It would be difficult to imagine just what activities could be characterized as "peculiarly business activities" given the broad spectrum of endeavors in which a homeowner can engage for

either business or non-business reasons. As a member of the court suggested at oral argument, one might practically have to be manufacturing steel before she could be said to be engaging in a *peculiarly* business activity.

the injury to Angela resulted directly from the care provided to her, not from activity that was in any sense extraneous to the babysitting relationship and that would have taken place regardless of the babysitter's paid duties. Thus, we believe it would have been reasonably clear in the first instance that the Thoeles' policy would not provide coverage for that injury, as it arose from a business pursuit. The awkward wording of the exception to the business pursuits exclusion does not alter our conclusion. Whatever questions that language might raise, we do not think it reasonably suggests that the negligent rendering of first aid in the context of paid child care would be covered as an "activity ordinarily incident to a non-business pursuit." *See Heinson v. Porter*, 244 Kan. 667, 772 P.2d 778, 783 (1989), *overruled on other grounds, Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990); *Haley v. Allstate Ins. Co.*, 129 N.H. 512, 529 A.2d 394, 396 (1987) (per curiam).

### III. CONCLUSION

Any injury that Calvin Thoele may have caused Angela Kanak in attempting to resuscitate her arose from the babysitting business of Sharon Thoele and thus falls within the business pursuits exclusion of the Thoeles' home insurance policy. The exception to this exclusion for activities ordinarily incident to non-business pursuits does not apply, as Calvin Thoele's efforts were an inherent part of the care Sharon Thoele was paid to provide Angela. The district court was therefore correct in concluding that the policy did not provide coverage to Calvin Thoele in this instance and that Aetna bore no duty to defend or indemnify him.

AFFIRMED.