Litteer v. Utica Mut. Ins.            CV-95-47-SD    08/29/95 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Robert Litteer

    v.                                      Civil No. 95-47-SD

Utica Mutual Ins. Co., Inc.


O R D E R


Plaintiff Robert Litteer filed a petition for declaratory judgment in Belknap County (New Hampshire) Superior Court on December 15, 1994.  Pursuant to 28 U.S.C. § 1446, defendant Utica Mutual Insurance Company removed the declaratory judgment action to this federal court.  Jurisdiction is claimed under the provisions of 28 U.S.C. §§ 1332, 1441, and 2201.

Litteer's declaratory judgment action seeks a determination that, under the terms of a certain homeowner's insurance policy issued by Utica to Litteer, Utica is required to: (1) provide coverage for and a defense against injuries complained of in Taylor v. Litteer, Civ. No. 94-78-SD (D.N.H.), filed on February 26, 1994, and (2) award Litteer attorney's fees and costs pursuant to New Hampshire Revised Statutes Annotated (RSA) 491:22-b.

Presently before the court is Utica's motion for summary

judgment in the instant declaratory judgment action, to which plaintiff objects.[1]


## Background

In the complaint filed in Taylor v. Litteer, supra, plaintiff Christopher Taylor alleges claims against defendants Robert Litteer, Boy Scouts of America (BSA), and the Daniel Webster Council, Inc., of BSA for (1) negligence, (2) assault, (3) battery, (4) intentional infliction of emotional distress, (5) breach of fiduciary duty, and (6) negligent hiring and supervision. Taylor's claims arise out of the alleged sexual assault of Taylor by Litteer in 1984 when Litteer was Head Scout Master of Taylor's Boy Scout troop. All of the acts complained of are alleged to have taken place in a guest room of Litteer's Gilford, New Hampshire, home.

At all times relevant hereto, Litteer was the named insured on homeowner's insurance policy number 121927-2FH, issued by defendant Utica and effective from July 28, 1984, through July 28, 1985.[2]

---

[1]The court also has before it Utica's reply brief, filed July 31, 1995, which has been read and considered in advance of today's ruling.

[2]According to Taylor's complaint, the sexual assault is alleged to have occurred "[i]n late August of 1984 . . . ." Complaint ¶ 12.

The general provisions of the policy are set forth in Form

HO-3H, effective January 1974,[3] under the caption "Homeowners

Policy--Special Form."  Section 2, the "Coverages" section, provides:

> Coverage E -- Personal Liability
>    This Company agrees to pay on behalf of the
> insured all sums which the insured shall
> become legally obligated to pay as damages
> because of bodily injury or property damage,
> to which this insurance applies, caused by an
> occurrence.  This Company shall have the
> right and duty, at its own expense, to defend
> any suit against the insured seeking damages
> on account of such bodily injury or property
> damage, even if any of the allegations of the
> suit are groundless, false or fraudulent, but
> may make such investigation and settlement of
> any claim or suit as it deems expedient.
> This Company shall not be obligated to pay
> any claim or judgment or to defend any suit
> after the applicable limit of this Company's
> liability has been exhausted by payment of
> judgments or settlements.

-----

[3]Litteer argues that revised Form HO-3, April 1984 edition, was the policy in effect at the time of the incident alleged, rather than the January 1973 Form HO-3H.  Plaintiff's Objection ¶ 7.  However, Utica has submitted with its reply memorandum a "Notice to Manual Holders" which indicates that the April 1984 edition of the homeowner's policy at issue did not become effective in New Hampshire until August 1, 1988.  See Insurance Services Office, Inc., Notice No. 88-1 (attached as Exhibit A to Defendant's Reply Memorandum).  Moreover, the renewal certificate issued to Litteer for the period covering July 28, 1984, through July 28, 1985, indicates that the forms and policy endorsements then in effect include, inter alia, "Special Form Basic Policy Premium HO-3H (01/74) . . . ."  The court finds and rules, therefore, that the rights and liabilities of the parties, insofar as concerns the matter sub judice, are determined by the January 1974 edition of Form HO-3H, and the court's analysis herein is conducted in reliance on the terms and provisions of said form.

Utica Mutual Homeowner's Policy Form HO-3H (1/74 ed.) at 3 (attached as Exhibit B to Defendant's Motion for Summary Judgment). The policy defines the term "bodily injury" to comprise "bodily injury, sickness or disease, including care, loss of services and death resulting therefrom." Form HO-3H (1/74 ed.), ADDITIONAL DEFINITIONS ¶ 1. "Occurrence", within the meaning of the policy, "means an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." Id. ¶ 5. Finally, the policy specifically excludes from the "Personal Liability" section (Coverage E), any recovery for "bodily injury or property damage which is either expected or intended from the standpoint of the insured." Form HO-3H (1/74 ed.), EXCLUSIONS ¶ 1(f).

## Discussion

### 1. Summary Judgment Standard

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

4

trial.'" <u>Stone & Michaud Ins., Inc. v. Bank Five for Savings</u>, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).

Although "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994), the entire record will be scrutinized in the light most favorable to the nonmovant, with all reasonable inferences indulged in that party's favor, <u>Smith v. Stratus Computer, Inc.</u>, 40 F.3d 11, 12 (1st Cir. 1994), <u>cert. denied</u>, ___ U.S. ___, 115 S. Ct. 1958 (1995); <u>see also</u> <u>Woods v. Friction Materials, Inc.</u>, 30 F.3d 255, 259 (1st Cir. 1994); <u>Maldonado-Denis</u>, <u>supra</u>, 23 F.3d at 581.

"In general . . . a party seeking summary judgment [is required to] make a preliminary showing that no genuine issue of material fact exists.  Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." <u>National Amusements, Inc. v. Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)), <u>cert. denied</u>, ___ U.S. ___, 115 S. Ct. 2247 (1995).

> A "genuine" issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party.  <u>Maldonado-Denis</u>, 23 F.3d at 581.  In

5

> other words, a genuine issue exists "if there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" Id. (quoting Garside [v. Osco Drug, Inc.,] 895 F.2d [46,] 48 [1st Cir. 1990)]. A "material" issue is one that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995).

Although summary judgment is inappropriate when a trialworthy issue is raised, "[t]rialworthiness necessitates 'more than simply show[ing] that there is some metaphysical doubt as to the material facts.'" National Amusements, supra, 43 F.3d at 735 (quoting Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (alteration in National Amusements). Thus, "'[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve . . . .'" Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Accordingly, "purely conclusory allegations . . . rank speculation . . . [or] improbable inferences" may be properly discredited by the court, id. (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)), and "'are insufficient to raise a genuine issue of material fact,'" Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (quoting August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992)).

6

## 2. Is Sexual Assault an "Occurrence"?

Under New Hampshire law,[4] "the court determines an insurer's duty to indemnify the insured by considering whether the allegations against the insured fall within the express terms of the policy." Pennsylvania Millers Mut. Ins. Co. v. Doe, 882 F. Supp. 195, 197 (D.N.H. 1994) (citing United States Fidelity & Guar. Co. v. Johnson Shoes, Inc., 123 N.H. 148, 151-52, 461 A.2d 85, 87 (1983)), aff'd without opinion sub nom., Pennsylvania Millers Mut. Ins. Co. v. Cheever, 47 F.3d 1156 (1st Cir. 1995).

As hereinabove recited, the policy issued to Litteer provides coverage for, among others, "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence." Form HO-3H, § II, Coverage E (emphasis added). An "occurrence" may be either an "accident" or an "injurious exposure to conditions" which results in bodily injury or property damage during the policy term. Form HO-3H, ADDITIONAL DEFINITIONS ¶ 5.[5] Where, as here, the court must

---

[4]A federal court sitting in diversity must apply the substantive law of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 726 & n.1 (1st Cir. 1995).

[5]The New Hampshire Supreme Court has construed this type of provision broadly, noting that "'Occurrence' thus sweeps wider than 'accident,' because 'occurrence' is defined to include an injurious exposure to continuing conditions as well as a discrete event." Vermont Mut. Ins. Co. v. Malcolm, 128 N.H. 521, 523, 517 A.2d 800, 802 (1986) (Souter, J.). Despite this expansive construction, it remains that the "injurious exposure must . . . itself be accidental in nature." Id.

7

determine whether an event attains "occurrence" status such that the insurer's duty to defend is triggered, "the touchstone of interpretation is the definition of 'accident' as a <u>cause</u> of injury, as distinct from the injury itself." <u>Malcolm</u>, <u>supra</u>, note 5, 128 N.H. at 523, 517 A.2d at 802.

As understood by a reasonable person, an "'accident is an undesigned contingency, . . . a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." <u>Id.</u> (quoting <u>Guerdon Indus., Inc. v. Fidelity & Casualty Co.</u>, 123 N.W.2d 143, 147 (Mich. 1963)) (other citation omitted). From this definition, the New Hampshire Supreme Court has developed the following two-part test for determining whether an act may be characterized as an accident. "If the insured did not intend to inflict the injury on the victim by his intentional act, and the act was not so inherently injurious that the injury was certain to follow from it, the act as a contributing cause of injury would be regarded as accidental and an 'occurrence.'" <u>Id.</u> at 524, 517 A.2d at 803; <u>see also</u> <u>Providence Mut. Fire Ins. Co. v. Scanlon</u>, 138 N.H. 301, 305-06, 638 A.2d 1246, 1249 (1994) (reaffirming <u>Malcolm</u> test despite recognition "that our definition of 'accident' represents a minority view").

### a. Intent to Injure

Plaintiff asserts that his status as a pedophile renders him

8

"**incapable** of forming an intent to injure," Plaintiff's Objection Memorandum of Law at 5, and consequently all actions taken by Litteer prior to his pedophilia diagnosis constitute "accidental" exposures, id.  Similar arguments have been raised in both the federal and state courts of other jurisdictions, but have not been favorably looked upon.  See, e.g., Allstate Ins. Co. v. McCranie, 716 F. Supp. 1440, 1444 (S.D. Fla. 1989) (pedophile's actions "were, to some degree within his control, and not fortuitous, even if he had psychological problems") (applying Florida law), aff'd without opinion sub nom., Allstate Ins. Co. v. Manning, 904 F.2d 713 (11th Cir. 1990); State Farm Fire & Casualty Co. v. Watters, 644 N.E.2d 492, 496-97 (Ill. App. Ct. 1994) (same) (applying Illinois law), appeal denied, 649 N.E.2d 425 (Ill. 1995).  However, for the purposes of ruling on the motion sub judice, the court will assume arguendo that Litteer did not intend to cause the resulting injury.

     b.  "Inherently Injurious" Conduct

This then raises the second prong of the "accident" matrix: whether the act was inherently injurious.  Accord Malcolm, supra note 5, 128 N.H. at 524, 517 A.2d at 802; Pennsylvania Millers, supra, 882 F. Supp. at 198.  Put simply, "an insured's intentional act [cannot] be an accidental cause of injury when it is so inherently injurious that it cannot be performed without causing the resulting injury."  Malcolm, supra note 5, 128 N.H.

at 524, 517 A.2d at 802. "[A]n act is inherently injurious if it is certain to result in *some* injury, although not necessarily the particular alleged injury." Scanlon, supra, 138 N.H. at 306, 638 A.2d at 1249.

Contrary to plaintiff's assertions, see Plaintiff's Memorandum of Law at 3-4, the question of whether Litteer's conduct was "inherently injurious" is both a proper threshold question and subject to an objective inquiry.[6] See Mottolo, supra note 4, 43 F.3d at 727 ("The question, therefore, is whether [the] . . . intentional acts . . . were so 'inherently injurious' that they could not be performed without a certainty that some degree of injury . . . would result. This is an objective inquiry for which . . . 'intent' to injure is irrelevant."); accord New Hampshire Ball Bearings v. Aetna Casualty & Sur. Co., 43 F.3d 749, 754 (1st Cir. 1995) ("The fact that [plaintiff] did not intend to injure . . . is irrelevant.").

The New Hampshire Supreme Court has taken the position that sexual assaults are

> inherently injurious in the most obvious
> sense that they could not be performed upon a
> boy without appalling effects on his mind as
> well as forbidden contacts with his body.

---

[6]Though much pressed by plaintiff, the subjective analysis of intent discussed in MacKinnon v. Hanover Ins. Co., 124 N.H. 456, 459, 471 A.2d 1166, 1167 (1984) (per curiam), only enters the inquiry after coverage has been found and the extent of any "exclusion" language is being construed. For the reasons discussed infra, the court does not reach the question of applicable policy exclusions.

10

> This common understanding of the nature of
> such acts is beyond reasonable dispute and
> consistent with the legislative
> classifications of the acts within the most
> serious category of sex offenses, <u>see</u> RSA
> 632-A:2, XI.  <u>Because the causation of
> psychological injury was thus inherent in the
> acts alleged, the acts cannot be treated as
> accidental causes, and the defendant's claim
> that he did not actually intend to inflict
> the particular psychological injury claimed
> is irrelevant.</u>

<u>Malcolm</u>, <u>supra</u> note 5, 128 N.H. at 524, 517 A.2d at 802-03

(emphasis added).  Furthermore, this court has upheld a finding

of "inherently injurious" conduct, even when such conduct was

premised upon a solitary incident of alleged sexual assault.  <u>See</u>

<u>Pennsylvania Millers</u>, <u>supra</u>, 882 F. Supp. at 199 ("In the instant

case, the act complained of is precisely the type of act

contemplated by the [<u>Malcolm</u>] court.  [The insured] abused a

position of trust and his friendship with a young boy to commit a

grievous sexual assault for his personal gratification."); <u>accord</u>

<u>Watters</u>, <u>supra</u>, 644 N.E.2d at 496 ("the injury in sexual abuse

cases is inevitable and cannot be separated from the act

itself"); <u>Perreault v. Maine Bonding & Casualty Co.</u>, 568 A.2d

1100, 1101 (Me. 1990) ("Harm from the sexual abuse of a child is

so highly likely to occur that the intent to commit the act

inherently carries with it the intent to cause the resulting

injury."); <u>Whitt v. DeLeu</u>, 707 F. Supp. 1011, 1014 n.4 (W.D. Wis.

1989) (collecting cases from fifteen jurisdictions, including New

Hampshire, that have "adopted what has become the majority rule

and inferred the intent to cause injury as a matter of law in

11

liability insurance cases involving alleged sexual misconduct against minors").

In light of the authorities cited herein, there is but one conclusion for this court to draw. Accordingly, the court herewith finds and rules that plaintiff's alleged sexual misconduct is of such a nature and degree as to constitute an "inherently injurious" act under New Hampshire law. As a consequence of said ruling, the court further finds and rules that plaintiff's actions were not "accidental", whether due to psychological illness or otherwise, as that term is defined in the Utica policy, and thus coverage under the homeowner's policy was properly denied.

Defendant's motion for summary judgment, therefore, must be and herewith is granted.

Conclusion

For the reasons set forth herein, defendant's motion for summary judgment (document 6) is granted. Plaintiff's alleged sexual misconduct is not an "accident" as that term has come to be defined under either the unambiguous policy language herein presented or the decisional law of the courts of this state.

The clerk shall enter judgment accordingly.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

August 29, 1995

cc:  Edward D. Philpot, Jr., Esq.
     Jeffrey S. Cohen, Esq.