Hillsborough-northern judicial district
No. 94-068

## A.B.C. BUILDERS, INC. & a.

v.

## AMERICAN MUTUAL INSURANCE COMPANY

July 14, 1995

*Devine, Millimet & Branch, P.A.,* of Manchester (*Julie Ann Boyle* and *Andrew D. Dunn* on the brief, and *Mr. Dunn* orally), for the plaintiffs.

*Ouellette, Hallisey, Dibble ana Tanguay, P.A.,* of Dover (*Stephen J. Dibble* on the brief and orally), for the defendant.

HORTON, J. The defendant, American Mutual Insurance Company, appeals a decree of the Superior Court (*Goode,* J.) awarding $249,992 in damages to the plaintiffs, A.B.C. Builders, Inc. (A.B.C.) and Robert and Lorraine Boisvert, as reimbursement for their settlement and defense of a claim that the defendant refused to defend. We affirm.

In May 1985, A.B.C. purchased a building lot in Bedford upon which it intended to build a home for its principal owners, the Boisverts. Construction began in 1986. In November 1986, the Cupples, owners of an adjacent lot, complained to the plaintiffs that the construction encroached upon their property. A survey confirmed that the residence under construction encroached onto the Cupples' property by eight feet, a retaining wall encroached by thirty-five feet, and approximately thirty-three feet of the residence was in violation of the twenty-five foot setback requirement of the Bedford Zoning Ordinance.

A.B.C. was insured under a comprehensive general liability policy issued by the defendant. The policy obligated the defendant to

> [p]ay . . . all sums which the insured shall become legally obligated to pay as damages because of . . . property damage . . . caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages

on account of such . . . property damage, even if any of the allegations in the suit are groundless, false or fraudulent . . . .

In March 1987, the Boisverts notified the defendant of the potential claim. The defendant denied coverage in June 1987.

In November 1987, the Cupples brought a petition in the superior court against A.B.C. and the Boisverts, seeking injunctive relief and money damages. In February 1988, the defendant again denied coverage and refused to defend, although it retained counsel for its own benefit to follow the defense of the petition by the plaintiffs. The plaintiffs negotiated a settlement with the Cupples. Pursuant to the settlement, the Boisverts agreed to pay $110,000 to the Cupples, resurvey the property, stabilize a slope next to the Cupples' house, and landscape the embankment separating the two properties. They also agreed to a land swap with a corresponding lot line adjustment. The defendant's counsel was informed of, but did not participate in, the settlement. The plaintiffs sought indemnity from the defendant for the settlement, consequential damages related to financing it, and attorney's fees and costs.

In March 1988, the plaintiffs petitioned the superior court for declaratory judgment as to the defendant's duty to defend and indemnify. The defendant moved to dismiss on the ground that the policy definition of "property damage" was limited to "tangible property," which did not include damage to real property like that suffered by the Cupples. The trial court denied the motion, ruling that the term "property damage" included damage to real estate. A subsequent bench trial resulted in a ruling that the defendant should have defended its insured against the Cupples' claim, and in December 1993, the trial court ordered the defendant to indemnify the plaintiffs the sum of $249,992. On appeal, the defendant argues that the trial court erred by: (1) ruling as a matter of law that the term "tangible property" includes real property; (2) inquiring into the underlying facts and finding that the encroachment upon the Cupples' land was not intentional, and therefore constituted an "occurrence" under the policy that the defendant was obliged to defend and indemnify; and (3) awarding damages for which the defendant would not have been liable had it admitted coverage as the plaintiffs originally demanded.

We begin with the defendant's argument that the policy does not cover damage to the Cupples' real property. The policy defines "property damage" as either

(1) physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom, or (2) loss of use of

tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period.

The defendant argues that the term "tangible property" includes personal property, but not real property, relying upon our holding in *Cannata v. Town of Deerfield,* 132 N.H. 235, 242–43, 566 A.2d 162, 166-67 (1989).

The trial court found that the *Cannata* definition was "for the limited purpose [of] interpreting the statutory provisions of RSA ch[apter] 507-B, which is not applicable to this proceeding." We agree. In *Cannata,* we noted conflict in the case law and secondary authorities as to whether tangible property includes both real and personal property, implicitly recognizing that the appropriate definition of the term may vary depending upon the context in which it is to be applied. *Id.* at 242–43, 566 A.2d at 167. We concluded, however, that in the limited context of municipal liability for property damage claims under RSA chapter 507-B, "the statutory term tangible property, as commonly used and understood, refers to tangible personal property, not to real property." *Id.* at 243, 566 A.2d at 167. We also found support for our conclusion in *Cannata* in the legislative history accompanying RSA chapter 507-B, *id.,* which is inapposite to the construction of an insurance contract. We therefore find that the *Cannata* definition of "tangible property" is inapplicable here.

 The term "tangible property," as used in the insurance policy at issue, is ambiguous. The parties disagree as to the definition of "tangible property," and the term is neither defined in the policy nor reasonably clear from a fair reading of the contract as a whole. We construe ambiguous policy language in favor of providing coverage to the insured. *Coakley v. Maine Bonding & Cas. Co.,* 136 N.H. 402, 410, 618 A.2d 777, 781 (1992). "The insurance company remains free to limit its liability through 'clear and unambiguous policy language.' Given the strict standard for interpreting insurance contracts established by *Trombly [v. Blue Cross/Blue Shield,* 120 N.H. 764, 423 A.2d 980 (1980)], the policy language must be so clear as to create no ambiguity which might affect the insured's reasonable expectations." *Cacavas v. Maine Bonding & Casualty Co.,* 128 N.H. 204, 208, 512 A.2d 423, 425 (1986). If the defendant wishes to exclude real property from the coverage provided by the policy, it must use "clear and unambiguous policy language" to do so. *Id.* (quotation omitted). We find that the defendant has not done so, and we affirm the trial court's ruling that "the term 'property damage'. . . as a matter of law . . . include[s] real property."

We next address the defendant's argument that the Cupples' petition in the underlying case does not allege an "occurrence" within

the meaning of the policy, and that the trial court erred by inquiring into the underlying facts and by finding an occurrence. The Cupples' petition alleged that the plaintiffs' construction "continues to encroach on Cupples' property, as does the retaining wall and Boisvert has repeatedly and continues to trespass onto Cupples' property."

In deciding the scope of coverage, a court must compare the policy language with the allegations in the original suit, inquiring into the underlying facts if necessary, to see if the claim falls within the express terms of the policy. *See M. Mooney Corp. v. U.S. Fidelity & Guaranty Co.,* 136 N.H. 463, 469, 618 A.2d 793, 796–97 (1992). The legal nomenclature the underlying plaintiff uses to frame the suit is relatively unimportant. *See id.* We therefore find no error in the trial court's inquiry into the facts underlying the allegations in the petition.

The trial court concluded that the "plaintiffs' conduct has resulted in an 'occurrence' as defined by the policy." We agree. The policy defines an "occurrence" as "[a]n accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." In construing similar liability insurance policies, we have observed that "[t]he term 'accident,' in turn, is reasonably understood to mean: 'an undesigned contingency, . . . a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.'" *Jespersen v. U.S. Fidelity & Guaranty Co.,* 131 N.H. 257, 260, 551 A.2d 530, 532 (1988) (quotation omitted).

The defendant argues that the alleged encroachment and trespass are intentional, inherently injurious acts that necessarily result in intentional injury, and that the acts therefore cannot constitute an occurrence under the policy. The trial court found that the plaintiffs did not intend injury. We agree.

"[A]n insured's intentional acts may be considered accidental if the insured did not intend to inflict injury and the insured's intentional acts were not inherently injurious." *Lumber Ins. Companies, Inc. v. Allen,* 820 F. Supp. 33, 35 (D.N.H. 1993); *see Fisher v. Fitchburg Mut. Ins. Co.,* 131 N.H. 769, 773, 560 A.2d 630, 632 (1989); *Jespersen,* 131 N.H. at 260, 551 A.2d at 532. A review of the record supports the trial court's finding that "[t]hough it may be, as defendants contend, that the plaintiffs' [*sic*] acted 'intentionally' in that their combined acts were voluntary and knowing, their conduct was executed (1) without intent to injure or cause damage, and (2) in ignorance of the true location of the common boundary line between the two properties." *Cf. Lumber Ins. Companies, Inc.,* 820 F. Supp. at 35–36 (insured's intentional but mistaken trespass is accidental if

mistaken belief has a basis in fact because then conduct is not intended to cause injury); *State v. Glens Falls Ins. Co.,* 404 A.2d 101, 104 (Vt. 1979) (insured sheriff entitled to coverage with respect to wrongful levy claim where he had mistaken belief he was authorized to levy on property he seized).

■ We also do not find the plaintiffs' activity in constructing the encroaching residence to be inherently injurious. "[A]n act is inherently injurious if it cannot be performed without a certainty that some injury will result." *Providence Mut. Fire Ins. Co. v. Scanlon,* 138 N.H. 301, 306, 638 A.2d 1246, 1249 (1994). We have little difficulty concluding that it was not certain that the residence would be built encroaching upon the neighbor's land, resulting in injury to the neighbor's property. *Cf. id.* ("Considering that until the final shot, numerous [BBs] had been fired and the participants hit without injury, we have little difficulty concluding that it was not certain that the final shot would result in injury."). Because the plaintiffs neither intended the injury or damage caused nor were engaged in an inherently injurious activity, we affirm the trial court's ruling that the encroachment constituted a covered occurrence under the policy. *Cf. Fisher,* 131 N.H. at 773, 560 A.2d at 632.

■ Finally, the defendant argues that the trial court erred by ordering it to indemnify the plaintiffs the sums due under the settlement agreement because it would not have been liable for those damages had it admitted coverage as originally demanded by the plaintiffs. We disagree. "The burden of establishing noncoverage is upon the insurer," *U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.,* 123 N.H. 148, 153, 461 A.2d 85, 87 (1983); *see* RSA 491:22-a (1983), including the burden of proof as to damages, *see Coakley,* 136 N.H. at 409, 618 A.2d at 781. An insurer refusing to defend its insured undertakes the risk that the insured will settle and that it may be held liable for damages, and will not be heard to complain about the strict form of the structure of the relief afforded in the underlying case.

> [If the indemnitor fails to give assistance] at the time when it is of greatest importance, it is fair that he should abide by the result of the trial. The fact that it may be inconvenient to him to respond at the time when the indemnitee is sued does not change the equities of the situation, because of his primary duty to satisfy the claim of the creditor or the injured person; if he permits the matter to result in an action his should be the responsibility to see that it does not result in an improper judgment.

*White Mountain Cable Constr. Corp. v. Transamerica Insurance Co.,* 137 N.H. 478, 485, 631 A.2d 907, 911 (1993) (quotation omitted) (brackets in original).

An insurer's breach, however, should not be used as a method of obtaining coverage for the insured that the insured did not purchase. *See Titan Holdings Syndicate v. City of Keene, N.H.,* 898 F.2d 265, 269 (1st Cir. 1990); A. WINDT, INSURANCE CLAIMS AND DISPUTES § 4.35, at 213 (2d ed. 1988). The relief afforded must bear a reasonable relation to the liability covered and the damages indemnified. We find that the damages awarded by the trial court—$110,000 for the cash settlement, $29,913.78 for the restoration and reparation of land, $98,669.72 for consequential damages related to financing the settlement, and $11,378.50 for attorney's fees incurred in the defense and effectuation of the settlement of the underlying claim—were appropriate.

■ The cost of restoration may be a proper measure of damages, even if greater than the diminution of the property's value, where "there is a reason personal to the owner for restoring the original condition" of the property. *Moulton v. Groveton Papers Co.,* 114 N.H. 505, 512–13, 323 A.2d 906, 911 (1974) (quotation omitted). Although *Moulton* is a tort case and the measure of damages may differ in tort and contract actions, *see Emery v. Caledonia Sand and Gravel Co.,* 117 N.H. 441, 446–47, 374 A.2d 929, 932–33 (1977), we have applied *Moulton* when determining the damages covered by a liability insurance policy, *see Coakley,* 136 N.H. at 412, 618 A.2d at 783. *Emery* provides that compensatory damages in a contract action are designed to restore the plaintiff to the position the plaintiff would have been in absent a breach. *Emery,* 117 N.H. at 447, 374 A.2d at 933.

■ In addition, because an insurance policy is a contract, its breach may result in an award of consequential damages if they were foreseeable and can be proved. *See Lawton v. Great Southwest Fire Ins. Co.,* 118 N.H. 607, 610–11, 392 A.2d 576, 579–80 (1978); WINDT, *supra*; B. OSTRAGER & T. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 5.05 (7th ed. 1994). Finally, an insurer has a duty to defend any cause of action that would fall under the policy if proved true, *White Mountain Cable Constr. Corp.,* 137 N.H. at 482, 631 A.2d at 909, and must therefore reimburse its insured for the defense of a claim when it refuses to defend, including costs and attorney's fees incurred in an action to determine coverage, RSA 491:22-b (1983). In conclusion, we find no reason to disturb the trial court's damages award.

*Affirmed.*

All concurred.