Samsco, et al. v. Hartford, et al.    CV-92-564-M    11/06/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Samsco, Inc. and Samuel G. Travis,
      Plaintiffs

      v.                                    Civil No. 92-564-M

Hartford Accident & Indemnity Company;
Massachusetts Bay Insurance Company; and
Maine Bonding & Casualty Company,
      Defendants


**O R D E R**


      The plaintiffs, Samsco, Inc., and Samuel G. Travis, brought
this declaratory judgment action to establish the defendant
insurers' obligation to defend and indemnify them in connection
with a suit then pending in the United States District Court for
the District of Minnesota, Nordale, Inc. v. Samsco, Inc. and
Samuel G. Travis, Docket No. 4-91-C-598 (the "underlying
litigation").  The underlying litigation charged Samsco and
Travis with two counts of patent infringement, two counts of
breach of contract, misappropriation of trade secrets, breach of
fiduciary duty, and unfair competition based on product
disparagement.

      The defendant Hartford Accident & Indemnity Company
("Hartford") insured Samsco under a policy effective July 11,
1988 through July 11, 1989.  Samsco was later insured by the
defendant Maine Bonding and Casualty Company ("Maine Bonding")
under a policy running from July 11, 1989 through January 1,
1990.  The defendant Massachusetts Bay Insurance Company

("Massachusetts Bay") insured Samsco under two successive commercial general liability policies covering the periods January 1, 1990 through January 1, 1991 (policy number ZDV3519818) and January 1, 1991 through January 1, 1992 (policy number ZDV3810763). The two Massachusetts Bay policies are substantially similar in pertinent language and will be collectively referred to as the "Policy". Direct quotations of policy language are taken from the earlier policy, number ZDV3519818.

Hartford and Maine Bonding agreed to defend Samsco in the underlying litigation subject to a reservation of their rights to later contest coverage. Massachusetts Bay flatly denied coverage and declined to participate in the defense. This declaratory judgment action was stayed pending the outcome of the underlying litigation.

The jury in the underlying litigation found Samsco and Travis liable for breach of contract and the verdict was upheld on appeal. Although no claim for indemnity was made (Samsco and Travis conceded that the Hartford and Maine Bonding policies did not provide coverage for breach of contract), Hartford and Maine Bonding did expend $1,111,245,10 to defend the underlying litigation. After taking an assignment of Samsco's right to a defense under the Massachusetts Bay policies, Hartford and Maine Bonding filed counterclaims in the instant case to recover one third of their defense costs from Massachusetts Bay.

Massachusetts Bay has filed a motion for summary judgment, claiming that no genuine issue of material fact exists and, as a matter of law, it had no contractual duty to defend Samsco in the underlying litigation. Hartford and Maine Bonding jointly object and have filed a cross motion for summary judgment. For the reasons that follow, Massachusetts Bay's motion for summary judgment is granted and Hartford and Maine Bonding's joint cross motion for summary judgment is denied.

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party carries its burden, the burden shifts to the nonmoving party to demonstrate, with regard to each issue on which it has the burden of proof, that a trier of fact could

3

reasonably find in its favor. <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306 (1st Cir. 1997).

At this stage, the nonmoving party "may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue" of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial. <u>Id.</u> (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." <u>Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center</u>, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Discussion

The parties agree that whether Massachusetts Bay had a duty to defend in the underlying litigation is an issue governed by New Hampshire law.

> It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy, even though the suit may eventually be found to be without merit.

<u>United States Fidelity & Guar. Co., Inc. v. Johnson Shoes, Inc.</u>, 123 N.H. 148, 151-52 (1983). In resolving this issue, the court considers what the insured would reasonably expect that his

4

rights are under the policy.  Id. at 152.  The "court must compare the policy language with the allegations in the original suit, inquiring into the underlying facts if necessary, to see if the claim falls within the express terms of the policy.  A.B.C. Builders v. American Mut. Ins. Co., 139 N.H. 745, 749 (1995).

The underlying litigation contained seven counts: two counts asserting patent infringement, two counts asserting breach of contract, three counts asserting, respectively, misappropriation of trade secrets, breach of fiduciary duty, and unfair competition/product disparagement.  Although Massachusetts Bay moved for total summary judgment, it discussed only Count VII in its brief.  It argued that Hartford and Maine Bonding were necessarily estopped from asserting that Massachusetts Bay had a duty to defend any counts for which Hartford and Maine Bonding had themselves denied coverage under their own policies.  Without addressing the estoppel argument on its merits, the court notes that Hartford and Maine Bonding are asserting the insured's contractual rights to a defense, under an assignment. Massachusetts Bay does not seem to claim that Hartford's and Maine Bonding's denial of coverage under their own policies somehow estops the insured from asserting coverage under Massachusetts Bay's own policy.  Massachusetts Bay's argument is without merit.  However, as none of the factual allegations or legal claims described in the first six counts of the complaint relate to bodily injury, property damage, personal injury or advertising injury as covered by the policy, the court is able to

5

rule as a matter of law that none of those counts gives use to coverage or a right to a defense under the Massachusetts Bay policy.

Count VII alleged a cause of action under 15 U.S.C. §1125(a) for unfair competition based on product disparagement. 15 U.S.C.A. §1125(a) (1998) provides that

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
>
> . . .
>
> (B) in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Count VII specifically alleged that "Samsco and Travis made false and deceptive statements about Nordale's Evaporator Apparatuses. The statements included false, misleading and disparaging statements regarding the operation, quality and safety of the Nordale Evaporation Apparatuses." (Complaint ¶ 46.) The complaint further alleged that the statements were made willfully and maliciously. (Complaint ¶ 47.)

The Policy provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. . . . We will have the right and duty to defend any

6

'suit' seeking those damages." (Policy, Coverage B, 1(a).)

Advertising injury is defined as follows:

> "Advertising Injury" means injury arising out of one or more of the following offences:
> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> b. Oral or written publication of material that violates a person's right of privacy;
> c. Misappropriation of advertising ideas or style of doing business; or
> d. Infringement of copyright, title or slogan.

(Policy § V, 1.)

The policy further provides that an "advertising injury" is covered only if the offen[s]e is committed during the policy period in the "coverage territory" and in the course of advertising the insured's goods, services or products. (Policy Coverage B, c.) Thus, Count VII, on its face, arguably described an advertising injury as defined in the Policy and, absent an applicable exclusion, Massachusetts Bay would have been obligated to defend the insured as to that count.

But Massachusetts Bay argues that two exclusions apply. The first disclaims coverage for an advertising injury "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." (Policy Coverage B, 2b.) Massachusetts Bay says that because Count VII alleged that the disparaging statements were made wilfully and maliciously, the exclusion applies. Hartford and Maine Bonding counter that acting wilfully and maliciously is not the same thing as acting with knowledge of falsity.

7

The New Hampshire Supreme Court has noted that "willful" means intentional, deliberate or voluntary. See Appeal of N.H. Sweepstakes Commission, 130 N.H. 659, 664 (1988). Thus, the complaint alleges an intentional act. While some courts have read allegations of intent, in conjunction with a cause of action that requires a false statement, as necessarily implying knowledge of falsity. See e.g., E.E.O.C. v. Southern Pub. Co., Inc., 894 F.2d 785, 790 (5th Cir. 1990) (intentional slander excluded), more caution is appropriate when the second term at issue is ambiguous.

In the context of a defamation action, the New Hampshire Supreme Court has defined "actual malice" as acting "with knowledge of the falsity [of a statement] or with a reckless disregard for truth or falsity." Nash v. Keene Pub. Corp., 127 N.H. 214 (1985). Thus, the complaint could be read as alleging either a statement made with knowledge of falsity, a claim subject to the exclusion, or, a statement made with reckless disregard for its truth or falsity, a claim covered by the Policy. See Federal Ins. Co. v. Cablevision Sys. Dev. Co., 637 F. Supp. 1568, 1581 (E.D.N.Y. 1986) (noting that "[d]isparaging statements obviously may be made wrongfully and with intent to harm the reputation of another, yet without any actual knowledge that such statements are false.") (citation omitted). Under New Hampshire law, such ambiguity must be resolved in favor of the insured: "[I]n a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the

8

policy, the doubt must be resolved in the insured's favor."
Green Mt. Ins. Co. v. Foreman, 138 N.H. 440 (citation and
internal quotations omitted).  Accordingly, the first exclusion
does not apply.

The second exclusion relied on by Massachusetts Bay
disclaims liability for personal or advertising injury "[a]rising
out of oral or written publication of material whose first
publication took place before the policy period."  (Coverage B,
2a(2).)  Of all the potentially disparaging statements alleged in
the complaint, only one need be addressed here.  In their
objection to Massachusetts Bay's motion for summary judgment,
Hartford and Maine Bonding assert that "discovery in the
underlying case revealed that the only disparaging comments made
by Samsco employees with respect to the underlying plaintiff
suggested that the underlying plaintiff was out of business."  As
noted above, New Hampshire law allows the court to look beyond
the pleadings to determine whether the claim is covered by the
policy.  See A.B.C. Builders, 139 N.H. at 749.

Hartford and Maine Bonding cite a statement allegedly made
by a representative of Samsco to an employee at Karsten
Manufacturing to the effect that Nordale had gone out of
business.  Hartford and Maine Bonding point out that this
statement, allegedly made during the first quarter of 1990, was
within Massachusetts Bay's policy period.  Hartford and Maine
Bonding also acknowledge, however, that a similar statement was
allegedly made by Travis to a representative of a plumbing and

9

heating company in Michigan in May of 1989.  Hartford and Maine

Bonding argue, however, that Travis has consistently denied

making such a statement.  But they rely on what appears to be an

unsworn statement by Travis in which he simply makes a blanket

denial of all the allegations in Count VII of the complaint in

the underlying litigation.  That unsworn blanket denial is

insufficient, for summary judgment purposes, to raise a genuine

issue of material fact, and cannot undermine or serve to counter

the specific deposition testimony of Joel R. Ohnesorge that the

disparaging statement was made by Travis in May, 1989.  See

DeNovellis, 124 F.3d at 306.

Hartford and Maine Bonding also argue that "each publication

to an individual customer constitutes an entirely independent and

separate loss."  The court disagrees.  In Applied Bolting Tech.

Prod., Inc. v. United States Fidelity & Guar. Co., 942 F. Supp.

1029, 1036 (E.D.Pa. 1996), aff'd, 118 F.3d 1574 (3d Cir. 1997),

the court noted;

> Under the exclusion's plain terms, the "first
> publication" date is a landmark: if the injurious
> advertisement was "first published" before the policy
> coverage began, then coverage for the "advertising
> injury" is excluded.  It is irrelevant that later
> publications, made after the policy became effective,
> also caused "advertising injury" or increased the
> damages.

The critical issue here relates to insurance coverage, not

liability for the underlying tort.  Because the allegedly

disparaging statement at issue here was first published in May,

1989, before Massachusetts Bay's policy went into effect,

Massachusetts Bay had no contractual duty to defend the

plaintiffs with respect to Count VII in the underlying suit. Given this conclusion, the court finds it unnecessary to address Massachusetts Bay's argument that it also had no duty to defend under the "known loss" doctrine.

## Conclusion

As Massachusetts Bay had no duty under the Policy to defend any of the seven counts in the underlying action, Massachusetts Bay's motion for summary judgment (document no. 50) is granted and Hartford and Maine Bonding's joint cross motion for summary judgment (document no. 53) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 6, 1998

cc:  James G. Walker, Esq.
     Brian T. McDonough, Esq.
     E. Tupper Kinder, Esq.
     Theodore Wadleigh, Esq.

11