Purity Spring Resort v. TIG Insurance CV-99-295-JD  07/18/00
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Purity Spring Resort

    v.                        Civil No. 99-295-JD
                                    Opinion No. 2000 DNH 154

TIG Insurance Co.


O R D E R


Purity Spring Resort brings a declaratory judgment action against its insurer, TIG Insurance Company, seeking to compel TIG to provide coverage to Purity Spring in an underlying suit in state court.  TIG has denied coverage on the grounds that the circumstances alleged in the underlying suit do not constitute an "occurrence" within the meaning of the policy and the claims are excluded by the policy's pollution exclusion.  Purity Spring moves for summary judgment in its favor.[1]


Standard of Review

A motion for summary judgment is considered in light of the parties' burdens of proof at trial.  See Winnacunnet Coop. Sch. Dist. v. National Union Fire Ins. Co., 84 F.3d 32, 35 (1st Cir.

_____

[1]TIG's motion for summary judgment was not accepted by the court because it was filed, in violation of LR 7.1(a)(1), as part of its opposition to Purity Springs's motion for summary judgment.  TIG, therefore, does not have a pending cross motion for summary judgment.

1996).  Purity Spring brought its declaratory judgment action in state court under the New Hampshire declaratory judgment statute, N.H. Rev. Stat. Ann. ("RSA") § 491:22, which continues to apply here, following removal based on diversity jurisdiction.  See Titan Holdings Syndicate v. City of Keene, 898 F.2d 265, 273-74 (1st Cir. 1990); EnergyNorth National Gas v. Associated Elec. & Gas., 21 F. Supp. 2d 89, 90-91 (D.N.H. 1998).  "In any petition under RSA 491-22 to determine the coverage of a liability insurance policy, the burden of proof concerning the coverage shall be upon the insurer whether he institutes the petition or whether the claimant asserting the coverage institutes the petition."  RSA § 491-22-a.  Therefore, TIG bears the burden of proof of non-coverage.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment, Purity Spring, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where as here the moving party does not bear the ultimate burden of proof, the moving

party may carry its burden for summary judgment by negating an essential element of the other party's claim or by showing that the other party will be unable to carry its burden at trial. See Carmona v. Toledo, ___ F.3d ___, 2000 WL 767873 at *7 (1st Cir. June 16, 2000). If Purity Spring makes its initial showing, TIG, as the party with the burden of proof at trial, must demonstrate that a reasonable trier of fact could find in its favor. See Sands v. Ridefilm, Corp., ___ F.3d ___, 2000 WL 622842 at *3 (1st Cir. May 18, 2000).

Background

Purity Spring Resort and the Hoyt family own property and operate a resort in Madison, New Hampshire, which includes Purity Lake, its outlet, and the dam at the outlet. In the spring, when the water rises in the lake, the flood gates on the dam are raised to release excess water. Freedom Springs Water Company operated a natural spring site in Freedom, New Hampshire, located downstream from Purity Spring. Beginning in 1996, Freedom Springs sold water to a bottled water company, Great Spring Waters of America, Inc.

Freedom Springs experienced several episodes of bacterial contamination of its surface springs, two of which occurred in March of 1997 and March of 1998, when the area of the springs

3

flooded. Due to problems in the business arrangement between Freedom Springs and Great Waters, Freedom Springs sought arbitration and then brought suit in state court against Great Waters and Purity Spring. Freedom Springs alleged a breach of contract claim against Great Waters and alleged claims of negligence, violation of a statutory duty, and trespass against Purity Spring. Freedom Springs alleges that Purity Spring released dammed water from its lake that flooded Freedom Springs's property, causing bacterial contamination of its springs.

Purity Spring sought coverage for Freedom Springs's claims under its commercial liability policy issued by TIG. TIG denied coverage on the grounds that Purity Springs's claims do not constitute an "occurrence" within the meaning of the policy because Purity Spring's actions were not an accident and because the pollution exclusion in the policy excludes coverage for property damage caused by a release of pollution or contamination by an insured.

## Discussion

In its declaratory judgment action, Purity Spring seeks a judgment that TIG is obligated, under its policy, to provide coverage for Freedom Springs's claims and moves for summary

4

judgment in its favor.  TIG disputes coverage under the policy and objects to summary judgment in favor of Purity Spring.

"It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy, even though the suit may eventually be found to be without merit." U. S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc., 123 N.H. 148, 151-52 (1983).  To determine the scope of coverage, the allegations in the underlying suit must be compared to the policy provisions. See A.B.C. Builders, Inc. v. American Mut. Ins. Co., 139 N.H. 745, 749 (1995).  In considering the allegations in the underlying complaint, the court is not bound by the language used, but instead must decide whether "by any reasonable intendment of the pleadings liability of the insured can be inferred." Green Mountain Ins. Co. v. Foreman, 138 N.H. 440, 443 (1994).  "When the alleged facts do not clearly preclude an insurer's liability, inquiry may proceed into underlying facts . . . to avoid permitting the pleading strategies, whims, and vagaries of third party claimants to control the rights of parties to an insurance contract." M. Mooney Corp. v. U.S. Fidelity & Guaranty Co., 136 N.H. 463, 469 (1992).  Doubt as to the scope of the policy's coverage is to be resolved in favor of

5

the insured.  See Green Mountain, 138 N.H. at 443.

The interpretation of an insurance contract is a question of law.  See Bianco Prof'l Ass'n v. Home Ins. Co., 740 A.2d 1051, 1055 (N.H. 1999).  If a term is not defined in the policy, it is to be construed "as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole."  High County Assocs. v. New Hampshire Ins. Co., 139 N.H. 39, 41 (1994).  New Hampshire law interpreting an undefined and disputed term in a similar context may also provide guidance as to the meaning of that term.  See Bianco, 740 A.2d at 1055.

A.  Occurrence

The applicable insurance policy provides that TIG "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage,'" which is limited to "property damage" "caused by an 'occurrence.'"  TIG policy at § I, 1.a. & b.(1).  "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Id. § V, 12.  Accident is not defined in the policy.

The New Hampshire Supreme Court has construed "accident" in the context of defining "occurrence" in similar insurance policies to mean "'an undesigned contingency, . . . a happening

6

by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.'" Fisher v. Fitchburg Mut. Ins. Co., 131 N.H. 769, 772 (1989) (quoting Jespersen v. U.S. Fidelity & Guaranty Co., 131 N.H. 257, 260 (1989)); accord A.B.C. Builders, 139 N.H. at 749. An insured's intentional acts may still result in an accident if the insured did not intend the injury and if the acts were not inherently injurious. See id. An inherently injurious act is one that is "certain to result in some injury, although not necessarily the particular alleged injury." Green Mountain Ins., 138 N.H. at 442. The certainty of injury depends upon the circumstances and experience of the insured. See Providence Mut. Fire Ins. Co. v. Scanlon, 138 N.H. 301, 306 (1994).

In the underlying suit, Freedom Springs makes the following pertinent allegations: "In March, 1997, Purity Springs decided, contrary to the strong urgings of the New Hampshire Water Resource Board to the contrary, to remove gates from the dam at Purity Lake. This caused vastly more outflow from the dam than the then existing seasonal inflow and thus flooded out down stream lands including the Freedom Springs site." Compl. at ¶ 23. "As a result of the surface flooding, the water from the Freedom Springs site was rendered unusable during March of 1997 due to the infiltration of surface bacteria at levels above

7

acceptable tolerance." Id. at ¶ 24. "In March of 1998, contrary to the expressed direction and request of FSC [Freedom Springs Company], KSC Realty Trust, and the New Hampshire Water Resources Board, Purity Springs once again opened the gates from the dam structure on Purity Lake releasing high waters." Id. at ¶ 35. "As a result, an excessive outflow occurred and caused the flooding of low land down stream areas including the property owned by KSC Realty Trust upon which Freedom Springs is located." Id. at ¶ 36. Based on those factual allegations, Freedom Springs brought claims of negligence, violation of a statutory duty, and trespass against Purity Spring.

TIG contends that, as alleged, the flooding and resulting contamination of Freedom Springs's water in 1998 was not an accident because Purity Spring intentionally released the water when it knew from the flooding in 1997 that the released water would flood Freedom Springs's property and contaminate its springs. TIG argues that Purity Spring's notice of the potential harm caused by flooding shows that intentionally releasing water in 1998 constituted an inherently injurious act. Purity Spring contests the factual basis of its knowledge of any flooding or contamination from the release of water.

Regardless of the merits of Freedom Springs's allegations as to Purity Spring's notice of flooding in 1997, there are no

8

allegations that Purity Spring knew prior to 1997 that releasing excess water from the lake would harm Freedom Springs. Freedom Springs alleges only that the New Hampshire Water Resource Board urged Purity Spring not to release water in 1997, without any explanation as to the reason. Freedom Springs alleges nothing about Purity Spring's prior knowledge of potential harm and alleges no flooding incidents prior to 1997. Since Freedom Springs claims negligence, and the allegations in the complaint would permit an inference that at least in March of 1997 Purity Spring had no reason to anticipate property damage to Freedom Springs from releasing the water, the March 1997 flooding was an accident within the meaning of "occurrence" in the policy. At a minimum, therefore, the claims based on the March 1997 flooding would fall within the occurrence language of the TIG policy, triggering coverage. See, e.g., A.B.C. Builders, Inc., 139 N.H. at 751 ("[A]n insurer has a duty to defend any cause of action that would fall under the policy if proved true."). Therefore, Purity Springs has shown that TIG will not be able to carry its burden of proving that no coverage exists based on the occurrence requirement in the policy, and TIG has not demonstrated a triable issue as to coverage on that basis.

B.  Pollution Exclusion

TIG also contends that the pollution exclusion bars coverage.  The TIG policy excludes coverage for property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants: At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured."  TIG policy, § I, 2.f(1)(a).  TIG contends that the water released by Purity Spring from the lake was a pollutant, triggering the pollution exclusion.  Purity Spring argues that Freedom Springs does not allege that the water from the lake was polluted but instead that the flooding resulted in contamination of the springs.

The complaint alleges that Freedom Springs's site was flooded and "was rendered unusable during March of 1997 due to the infiltration of surface bacteria at levels above acceptable tolerance," and that the site was flooded again in 1998 and that the infiltration of surface bacteria again degraded the spring water.  Compl. at ¶¶ 23, 24, 36, 37, 39.  In Count I brought against Purity Spring, Freedom Springs alleges that in 1997 and 1998 water was released from the dam "flooding Plaintiff's downstream property and polluting Plaintiff's springs and the water therein with bacteria."  Id. at ¶ 68.  In Count II, Freedom

10

Springs alleges that Purity Spring's violation of its duty to maintain the dam caused flooding and damage to its property and also resulted in "the fresh water springs on Plaintiff's property [being] temporarily found to be contaminated with bacteria." Id. at ¶¶ 73, 74. In Count III, Freedom Springs alleges that Purity Spring's release of water constituted trespass due to the flooding of the property and contamination of the springs with bacteria. See id. at ¶¶ 79, 80.

Freedom Springs's allegations are not that the water released from the lake was polluted or contaminated. Instead, the allegations are that flooding caused by the release of water from the lake resulted in contamination of the springs with surface bacteria. The origin of the surface bacteria is not alleged. In addition, Freedom Springs alleges damage to the property by flooding which may include harm in addition to the contamination of the springs. A reasonable reading of Freedom Springs's allegations is that the contamination claimed was the result of flooding, not that the lake water was polluted. Since the lake water is not alleged to be a pollutant, release of the lake water did not constitute release of a pollutant within the meaning of the pollution exclusion in the policy.

Purity Spring, therefore, has demonstrated that TIG cannot show that it properly denied coverage under the terms of the

11

policy either because the alleged flooding and contamination was not an occurrence, as required in the policy, or because the release of the water constituted a release of a pollutant under the pollution exclusion. Since TIG cannot carry its burden of proof as to noncoverage under the policy, Purity Spring is entitled to summary judgment in its declaratory judgment action. TIG is therefore obligated under its policy to defend Purity Spring in the suit brought by Freedom Springs.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 11) is granted. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

July 18, 2000

cc:  Randall F. Cooper, Esquire
     Michael F. Aylward, Esquire

12